UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-60061-BLOOM/VALLE

DAVID MALDONADO,

      Petitioner,

v.

JULIE L. JONES, Secretary,
Florida Department of Corrections,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE</u>

THIS MATTER is before the Court upon Petitioner David Maldonado's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (ECF No. 1). United States District Judge Beth Bloom has referred the Petition to the undersigned for a Report and Recommendation. (ECF No. 14); *see also* 28 U.S.C. § 636.

Upon due consideration of the Petition, Memorandum in Support of the Petition (ECF No. 3), the State's Response (ECF No. 6), Petitioner's Reply (ECF No. 15), and all pertinent portions of the record, the undersigned recommends that the Petition be **DENIED** without an evidentiary hearing for the reasons stated herein. *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (concluding that an evidentiary hearing is not required unless petitioner can demonstrate that factual allegations, if proven, would show entitlement to relief).

# I.     **FACTUAL BACKGROUND**[1]

On the morning of August 6, 2007, Petitioner David Maldonado ("Petitioner") was spotted by Broward Sheriff's Office ("BSO") Deputy Maury Hernandez (the "Deputy") running a red light.  Tr. 804:19-24.  Deputy Hernandez, in plainclothes and driving an unmarked car, followed Petitioner as Petitioner pulled into a motorcycle repair shop.  Tr. 804:22-25; 1040:1-19.  At the motorcycle repair shop, Deputy Hernandez got out of his car, displayed his badge, and approached Petitioner.  Tr. 805:12-16.  The Deputy told Petitioner that Petitioner had failed to stop at a red light and asked to see Petitioner's driver's license.  Tr. 773:18-22; 805:16-23.  In response, Petitioner stated that he did not have a license, and that he was an Opa-Locka police officer. Tr. 775:15-23; 805:19-22.

When Deputy Hernandez asked for identification, Petitioner shoved Deputy Hernandez and ran.  Tr. 778:25-779:5; 782:23-24; 805:24-806:8.  Deputy Hernandez ran after Petitioner, and radioed the station that Petitioner, who was wearing a red shirt, was armed.  Tr. 806:6-807:8; 809:20-810:5.  As Deputy Hernandez was running after Petitioner, he saw Petitioner stop, turn around, take a stance, and shoot at him.  Tr. 807:13-17.  Deputy Hernandez testified that he saw a flash from the muzzle of the gun, and that he instinctively turned his head away.  Tr. 807:17-20.  Deputy Hernandez was shot in the back of the head.  Tr. 810:9.  The bullet fragmented and some fragments lodged in his head.  Tr. 1343:10-1344:4.  An eyewitness to the shooting testified that he saw a man, wearing a red shirt and blue jeans, running with someone running after him. Tr. 1257:1-5.  The eyewitness saw the man in the red shirt stop, turn, and fire two or three shots at

---

[1] The Factual Background is a summary of the trial evidence.  *See generally* (ECF No. 8-1, Trial Transcript) (hereinafter cited as "Tr."); *see also* (ECF Nos. 3 at 12-29 and 6 at 8-17).  For consistency, all page references are to the original page numbers in the Trial Transcript, not the CM/ECF page numbers appearing on the banner on top of each page.

the man behind him, who then fell to the ground.  Tr. 1257:5-12.  In addition, both the Deputy and the motorcycle shop owner saw that Petitioner had a gun.  Tr. 779:12-18; 809:20-22.

During the foot chase, Deputy Hernandez carried (but did not discharge) his service firearm, a .45 caliber gun, loaded with hollow point bullets.[2]  Tr. 815:6-7; 818:5-819:21; 956:9-14; 975:3.  After Deputy Hernandez was shot, his service firearm was found on the ground near his body, fully loaded.  Tr. 831:17-21; 974:18-20; 976:18-977:4; 988:5-9.  Defendant was ultimately arrested.  At the time of his arrest, Defendant was shirtless, his left hand was bleeding, and he did not possess a firearm or holster.  Tr. 895:5-6; 896:10-12.

During the on-scene investigation that followed, one of the detectives found a red shirt, with a nylon holster rolled up underneath, lying on the grass.  Tr. 909:2-6.  An officer also found two spent casings, approximately 100 feet away from the Deputy's body.  Tr. 974:12-15.  Additionally, another officer and his K-9 partner recovered a Glock .45 caliber firearm with blood on it, approximately 200 feet away from where the red shirt and holster were found.  Tr. 916:3-8; 954:24-955:8; 1005:25.

Subsequent forensic examination of the recovered gun confirmed the following:  (i) the gun bore serial number KTB400, Tr. 1181:22-23; 1299:8-13; (ii) the blood on the gun matched Petitioner's DNA, Tr. 1302:6-18; 1304:13-24; (iii) although the gun had a magazine capacity of ten rounds, it had seven bullets loaded in the magazine and one bullet inside the chamber, Tr. 1004:24-1005:5; (iv) the two spent casings found at the crime scene came from this gun, Tr. 974:12-15, 977:17-18, 1181:16-23.

---

[2] Relevant to the Petition, Deputy Hernandez mistakenly testified that his service firearm was loaded with full metal jacket bullets, not hollow points, and that it was against BOP policy to use hollow point bullets in one's service firearm.  Tr. 813:17-19; 814:13-815:3.  In fact, however, the Deputy's gun was loaded with .45 caliber hollow point bullets, and hollow point bullets were standard issue for BSO personnel.  Tr. 956:9-14; 977:1-6.

In addition, officers executed a search warrant at Petitioner's residence.  The search resulted in the seizure of the following: (i) a Glock .45 caliber magazine (loaded with 10 rounds) and loose .45 caliber bullets, found on the living room table, Tr. 1140:9-1141:7; (ii) an extended .40 caliber magazine (loaded with 25 rounds), also found on the living room table, Tr. 1141:14-17; (iii) a Smith and Wesson blue gun case containing 14 .40 caliber cartridges, found in the garage, Tr. 1144:19-24; (iv) a Glock black plastic gun case, containing a receipt (in the name of Miguel Angel Polanco), found in the garage, Tr. 1147:10-1148:13; (v) a black tray with .40 caliber ammunition from different manufacturers, found on a shelf in the garage, Tr. 1144:10-17; 1147:10-12; (vi) a manila envelope, bearing Serial No. KTB400, containing .45 caliber casings, found inside the Glock gun case in the garage, Tr. 1148:14-1149:15; (vii) five .45 caliber bullets in a clear plastic tray, found on a shelf in the garage, Tr. 1144:10-17; 1145:4-6; (viii) two target practice silhouettes, found on a wall in the garage, Tr. 1149:20-22.  *See also* (ECF Nos. 3 at 24-25, 6 at 14-15).

In a post-arrest statement, Petitioner stated, among other things, that:  he was a  Marine, Tr. 1035:21-23; the gun found at the scene belonged to his friend Miguel Angel Polanco ("Polanco"), Tr. 1092:15-1093:22; he took off his red shirt because he heard an officer describe the suspect as wearing a red shirt, Tr. 1043:21-23; he had a holster, but it was for his BB gun, Tr. 1061:9-11; he did not own any firearms, but had a BB gun that he carries, Tr. 1049:1-2; 1055:18-19; and his friend Polanco left a gun box in his house, Tr. 1071:18-23.

## II.    PROCEDURAL HISTORY

### A.  Trial and Direct Appeal

On August 23, 2007, Petitioner was charged by Information with attempted first-degree murder on a law enforcement officer (Count 1) and attempted carjacking (Count 2).[3]  (ECF No. 7-1, Ex. 3).  After a 10-day trial, Petitioner was convicted on Count 1 and of the lesser included offense of attempted robbery on Count 2.  (ECF No. 7-1, Ex. 8).  Thereafter, Petitioner was adjudicated guilty and was sentenced to life in prison (with a 20-year mandatory minimum) on Count 1 and 10 years in prison on Count 2 (to run concurrently with the sentence imposed on Count 1).  (ECF No. 7-1, Exs. 9, 10).

Petitioner appealed his conviction to the Fourth District Court of Appeal ("Fourth DCA"). (ECF No. 7-1, Ex. 11).  The sole issue on appeal was whether the trial court erred in admitting "into evidence . . . multiple pieces of irrelevant and highly prejudicial evidence," which required reversal and a new trial.  (ECF No. 7-1, Ex. 12).  Specifically, Petitioner challenged the admission of: (i) his post-arrest statement; (ii) testimony from a Marine Corp representative that contradicted Petitioner's post-arrest statement that he was a former Marine; (iii) various gun-related items seized during the search of Petitioner's residence; and (iv) testimony about a second gun purchased by witness Polanco for Petitioner.  (ECF No. 7-1, Ex. 12).

The Fourth DCA affirmed Petitioner's conviction, finding "no error in the trial court's admission of the [challenged] evidence."  *Maldonado v. State*, 64 So. 3d 166, at 169 (Fla. 4th DCA 2011); *see also* (ECF No. 7-1, Ex. 15).  Moreover, the appellate court reasoned that "[e]ven if the admission of these items constituted error, [the court] would find the error harmless. . . . [because]

---

[3] The facts underlying the carjacking charge are omitted from the Factual Background, *supra*, because they are not relevant to the Petition.

[t]he record demonstrates beyond a reasonable doubt that the error did not contribute to the verdict." *Id.* Petitioner then filed a motion for rehearing, which was denied. (ECF No. 7-1, Exs. 16, 18). Accordingly, the Fourth DCA issued its mandate on July 29, 2011. (ECF No. 7-1, Ex. 19).

Next, Petitioner obtained leave to file a motion to invoke the discretionary jurisdiction of the Florida Supreme Court. (ECF No. 7-1, Exs. 20, 21). On April 26, 2012, the Florida Supreme Court declined to accept jurisdiction. *Maldonado v. State,* 90 So. 3d 271 (Fla. 2012); *see also* (ECF No. 7-1, Ex. 24).

**B. Motion for Post-Conviction Relief, pursuant to Fla. R. Crim. P. 3.850**

On April 24, 2013, Petitioner, who was represented by counsel, filed a motion before the 17th Judicial Circuit Court (the "trial court") for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[4] (ECF No. 7-1, Ex. 25). On April 11, 2014, Petitioner filed an amended motion for post-conviction relief.[5] (ECF No. 7-1, Ex. 26). In the amended motion, Petitioner argued that defense counsel was ineffective in failing to: (i) object to an incorrect jury instruction on manslaughter; (ii) impeach the Deputy's testimony regarding BSO procedures; (iii) call a ballistics and metallurgical expert; and (iv) impeach Polanco's credibility with evidence that

---

[4] In this initial 3.850 motion, Petitioner argued that trial counsel had been ineffective for failing to: (i) move to suppress gun-related evidence seized from a search of his residence; (ii) move to suppress Petitioner's post-arrest statement; (iii) move to suppress various eyewitness identifications of Petitioner; (iv) impeach Deputy Hernandez's cognitive ability to testify; (v) impeach Deputy Hernandez's testimony regarding Broward Sheriff's Office ("BSO") operating procedures; (vi) move to suppress the traffic stop of Petitioner; (vii) object to hearsay testimony regarding ballistics; and (viii) present a coherent theory of the defense. (ECF No. 7-1, Ex. 25 at 228-44).

[5] The amended motion for post-conviction relief superseded the original 3.850 motion. (ECF No. 7-1, Ex. 27 at 293). Accordingly, the trial court addressed only the grounds raised in the amended motion for post-conviction relief. *See* (ECF No. 7-1, Ex. 28 at 325-32).

Polanco hoped to receive favorable consideration on a pending criminal charge in exchange for his testimony at trial.  (ECF No. 7-1, Ex. 26 at 246-89).  Lastly, Petitioner argued that the cumulative effect of trial counsel's errors prejudiced Petitioner and required a new trial. (ECF No. 7-1, Ex. 26 at 289-90).

On March 21, 2017, the trial court denied Petitioner's amended motion for post-conviction relief, finding that counsel's performance had not been deficient, or alternatively, that Petitioner had failed to establish that he was prejudiced "given the overwhelming evidence of guilt presented in this case."  (ECF No. 7-1, Ex. 28 at 332).

### C.  Petitioner's 3.850 Appeals to Fourth DCA and the Florida Supreme Court

Petitioner appealed the trial court's denial of his amended motion for post-conviction relief to the Fourth DCA.  (ECF No. 7-1, Ex. 29).  On appeal, Petitioner argued that trial counsel was ineffective for failing to:  (i) renew a motion for change of venue after the completion of *voir dire*; (ii) investigate an alleged *Miranda* violation affecting Petitioner's post-arrest statement; (iii) move to dismiss the charges based on purported evidence that the Deputy's gun had been moved (and perhaps tampered with), thus purportedly establishing that the Deputy had accidentally shot himself; (iv) call a ballistic and metallurgical expert to testify regarding the composition and source of the bullet fragment removed from the Deputy's head; and (v) impeach the Deputy with BSO procedures regarding off-duty pursuit and the use of hollow point bullets.[6]  *See* (ECF No. 7-1, Ex. 30 at 336-56).

On September 28, 2017, the Fourth DCA issued a *per curiam* opinion, summarily affirming the trial court's order denying Petitioner's amended 3.850 motion.  (ECF No. 7-1, Ex. 31 at 358).

---

[6] As discussed more fully below, the first three grounds were not raised before the trial court in the amended motion for post-conviction relief.  Rather, these three grounds were raised for the first time in Petitioner's appeal to the Fourth DCA.

On October 11, 2017, Petitioner filed a notice seeking review before the Florida Supreme Court of the Fourth DCA's decision. (ECF No.7-1, Ex. 32). The Florida Supreme Court, however, dismissed the case, noting that it lacked jurisdiction to review a *per curiam* decision "issued without opinion or explanation." (ECF No. 7-1, Ex. 33 at 365).

On October 27, 2017, the Fourth DCA issued its mandate. (ECF No. 7-1, Ex. 34 at 367). Thereafter, Petitioner, with the assistance of counsel, filed the instant Motion for federal habeas relief pursuant to 28 U.S.C. § 2254. (ECF No. 1).

### D. Petitioner's Federal Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254

On January 11, 2018, Petitioner filed the instant Petition and accompanying Memorandum of Law seeking federal post-conviction relief under 28 U.S.C. § 2254. (ECF Nos. 1, 3). Petitioner asserts six claims for relief:

Claim I: counsel was ineffective for not renewing his motion for a change of venue after *voir dire* was completed;

Claim II: counsel was ineffective for failing to investigate a *Miranda* violation that occurred after Petitioner's arrest;

Claim III: counsel was ineffective for not moving to dismiss the charges after discovering that the Deputy's gun "had been moved and handled when the evidence confirmed that [the Deputy] had accidentally shot himself with his own gun;"

Claim IV: counsel was ineffective in not calling an expert witness on ballistics and metallurgical analysis;

Claim V: counsel was ineffective in not impeaching the victim regarding BSO operating procedures; and

Claim VI: the trial court erred in admitting (over counsel's objections) certain "irrelevant and highly prejudicial evidence," which denied Petitioner due process and a fair trial under the U.S. Constitution. (ECF No. 3 at 10-11).

### III.    PROCEDURAL ISSUES

#### A.  Timeliness

The State does not dispute the timeliness of the Petition.  (ECF No. 6 at 7).  Moreover, the undersigned's review of the procedural record, as discussed above, supports the conclusion that the Petition was filed within one-year of the completion of the state post-conviction proceedings, and therefore was timely filed.  28 U.S.C. § 2254(d); *see Lawrence v. Florida*, 549 U.S. 327, 331 (2007).

#### B.  Exhaustion

Although the State does not challenge the timeliness of the Petition, the State argues that Petitioner nonetheless failed to exhaust his state court remedies as to four of the six claims (Claims I, II, III, and VI).  As more fully discussed below, the undersigned finds that—as to Claims I, II, and III—Petitioner failed to exhaust available state court remedies.  Petitioner's arguments regarding Claim VI fail both procedurally and substantively, as discussed in Section V.C.  *See* V.C. *infra.*

Before a petitioner can properly file a § 2254 petition in federal court, the petitioner must exhaust all state court remedies that are available for challenging the conviction.  28 U.S.C. § 2254(b), (c); *Michel v. Inch*, No. 17-CV-61469, 2019 WL 1904110, at *4 (S.D. Fla. Apr. 9, 2019); *Harris v. Sec'y, Fla. Dep't of Corr.*, 709 F. App'x 667, 668 (11th Cir. 2018).  To properly exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the State's highest court, either on direct appeal or on collateral review.  *Preston v. Sec'y, Fla. Dep't of Corr.,* 785 F.3d 449, 456-59 (11th Cir. 2015); *Leonard v. Wainwright*, 601 F.2d 807, 808

(5th Cir. 1979);[7] *see Gacita v. Jones*, No. 15-60024-CIV, 2015 WL 5730005, at *2 (S.D. Fla. Sept. 8, 2015).

Against these legal principles, the undersigned finds that Petitioner has failed to exhaust available state court remedies as to Claims I, II, and III in his Petition.  Although Petitioner raised these claims on appeal to the Fourth DCA, he did not raise any of these claims on direct appeal from his conviction or in the amended 3.850 motion for post-conviction relief.  More specifically:

> Claim I (failure to renew change of venue motion) was not raised in either the initial motion or the amended motion for post-conviction relief before the 17th Judicial Circuit.  *See* (ECF No. 7-1, Exs. 25 and 26).  It was raised for the first time on appeal to the Fourth DCA.
>
> Claim II (*Miranda* violation) was raised in the initial 3.850 motion for post-conviction relief, but was not reasserted in the amended motion for post-conviction relief that superseded the initial filing.  *Compare* (ECF No. 7-1, Ex. 25) *with* (ECF No. 7-1, Ex. 26). Thus, it too was raised for the first time on appeal to the Fourth DCA.
>
> Claim III (failure to move to dismiss the charges after discovering that the Deputy's gun had been moved) was not raised in either the initial or amended motion for post-conviction relief before the 17th Judicial Circuit.  *Compare* (ECF No. 7-1, Ex. 30) *with* (ECF No. 7-1, Exs. 25 and 26).  Rather, this claim was raised for the first time on appeal to the Fourth DCA.

Accordingly, because Petitioner raised Claims I, II, and III for the first time on appeal from the trial court's denial of the amended 3.850 motion for post-conviction relief, Petitioner has failed to properly exhaust available state court remedies.  *See, e.g., Harris,* 709 F. App'x at 668 ("A party cannot raise a new claim for the first time in an appeal from a post-conviction motion in a Florida appellate court.") (citing *Mendoza v. State*, 87 So. 3d 644, 660 (Fla. 2011)); *see also Mize v. Hall*, 532 F.3d 1184, 1190-91 (11th Cir. 2008) (petitioner failed to exhaust claim raised for the first time on appeal from denial of state habeas petition); *Trotter v. State*, 932 So. 2d 1045, 1051 (Fla. 2006)

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued prior to September 30, 1981.

(issue raised for first time on appeal from lower court's denial of 3.850 motion was not preserved

for appellate review); *Gordon v. State*, 863 So. 2d 1215, 1219 (Fla. 2003) (issue raised for first

time on appeal from denial of 3.850 motion could not be considered). Thus, Claims I, II, and III

should be denied because Petitioner failed to exhaust available state court remedies.

### C. Procedural Default

Moreover, "[t]he teeth of the exhaustion requirement comes from its handmaiden, the

procedural default doctrine. If [a] petitioner has failed to exhaust state remedies that are no longer

available, that failure is a procedural default which will bar federal habeas relief" unless the

petitioner can show: (i) cause for and actual prejudice from the default; or (ii) a fundamental

miscarriage of justice if the claim is not considered.[8] *Gacita*, 2015 WL 5730005, at *2, *3 (citing

*Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001)); *see also Mize*, 532 F.3d at 1190; *Boykin v.

Sec'y, Fla. Dep't of Corr.*, No. 6:16-CV-883-Orl-40DCI, 2018 WL 9439838, at *2 (M.D. Fla. July

5, 2018). To establish "cause" for a default, a petitioner must show that his post-conviction counsel

was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Martinez v. Ryan*, 566

U.S. 1, 14 (2012). In addition to "cause," the petitioner must demonstrate "prejudice" from the

default by showing that the underlying ineffective assistance of trial counsel claim has some merit.

*Id.*

Here, state procedural rules bar Petitioner from filing a renewed 3.850 motion on the

unexhausted claims (Claims I, II, and III) in state court. As to these claims, the two-year statutory

deadline within which to file a 3.850 motion in state court has expired. *See* Fla. R. Crim.

P. 3.850(b); *see also Saavedra v. State*, 59 So. 3d 191, 192 (Fla. 3d DCA 2011) (3.850 motions

---

[8] Petitioner does not argue that the fundamental miscarriage of justice exception excuses his failure
to exhaust state remedies on these claims. *See generally* (ECF No. 15). Accordingly, the
undersigned need not address this alternative exception.

must be filed in state court within two years after appellate proceedings have concluded); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (noting that federal courts "may treat unexhausted claims as procedurally defaulted . . . if it is clear from state law that any future attempts at exhaustion would be futile.") (citations omitted).  Moreover, Petitioner has failed to establish "prejudice" sufficient to excuse his failure to exhaust these claims.

Petitioner summarily argues that he meets the "cause and prejudice" exception because *both* of Petitioner's post-conviction lawyers "*may have* rendered ineffective post-trial assistance of counsel."[9]  *See* (ECF No. 15 at 4, 5, 7, 10) (emphasis added).  This argument fails for several reasons.  First, Petitioner raises the argument (that post-conviction counsel were ineffective) for the first time in his Reply Brief, without having raised it in either the Petition or the Memorandum in support of the Petition.  *Compare* (ECF No. 15) (Petitioner's Reply) *with* (ECF Nos. 1 and 3) (Petition and Memorandum).  Arguments raised for the first time in a reply are not properly before the Court and therefore will not be considered.  *See Jarvis v. GeoVera Specialty Ins. Co., Inc.*, 733 F. App'x 468, 472 (11th Cir. 2018) (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)); *United States v. Britt*, 437 F.3d 1103, 1104 (11th Cir. 2006) (declining to consider argument raised in reply appellate brief not raised in initial appellate brief).  Second, although Petitioner casually raises the specter of ineffectiveness, Petitioner provides no support for the statement that both post-conviction counsel "*may have been*" ineffective.  Unsupported allegations about the *possibility* that counsel *may have been* ineffective are simply not enough to satisfy the "cause" prong necessary to excuse the failure to exhaust these Claims.  *See Michel*, 2019 WL 1904110, at *6

---

[9] Petitioner had two different lawyers in the trial court post-conviction proceedings: (i) attorney Christopher Grillo drafted the initial 3.850 motion, *see* (ECF No. 7-1, Ex. 25 at 244): and (ii) attorney Deana Marshall drafted the subsequent amended motion, *see* (ECF No. 7-1, Ex. 26 at 290).

("Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test."). Lastly, even if Petitioner's unsupported allegations of potential ineffectiveness sufficed to establish "cause," Petitioner has not shown actual prejudice, as required under *Martinez*.

Accordingly, the undersigned concludes that Petitioner has failed to exhaust Claims I, II, and III, all of which are now procedurally barred. Thus, the undersigned recommends that the Petition be denied as to Claims I, II, and III.[10]

## IV.   LEGAL STANDARDS FOR § 2254 PETITIONS

### A.  28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") limits the availability of federal post-conviction relief to state prisoners. Specifically, 28 U.S.C. § 2254(d), as amended by AEDPA, directs that writs of *habeas corpus* "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings," unless the petitioner can establish that the State court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). This standard is "highly deferential," requiring that "state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under § 2254(d), a petitioner must demonstrate that the State court's application of Supreme Court precedent was "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citation omitted). An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation

---

[10] Because Claims I, II, and III are unexhausted and procedurally barred, the undersigned need not address the merits of these claims. Nonetheless, the undersigned has reviewed the trial record and finds no merit in Petitioner's arguments that counsel was ineffective, for the reasons stated in the State's Response. *See* (ECF No. 6 at 25-27 (Claim I); 27-29 (Claim II); and 29-32 (Claim III)).

omitted).  Because "the state court's decision must have been more than incorrect or erroneous," *Wiggins*, 539 U.S. at 520, the Supreme Court has repeatedly described the § 2254(d) standard as "difficult to meet."  *Harrington*, 562 U.S. at 102; *Cullen*, 563 U.S. 181.

As the Supreme Court has explained, § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."  *Harrington*, 562 U.S. at 102.  The statute "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102.

### B.  *Strickland v. Washington*

The "clearly established Federal law" for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Marshall v. Sec'y, Fla. Dep't Corr.*, 828 F.3d 1277, 1284 (11th Cir. 2016).  To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must demonstrate both: (i) that his counsel's performance was deficient; and (ii) actual prejudice resulting from the deficient performance.  *Strickland*, 466 U.S. at 693-94.

First, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  The test to determine whether an attorney's performance was deficient "has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done. [The test is] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted at trial."  *White v. Singletary,* 972 F.2d 1218, 1220 (11th Cir. 1992).  In assessing counsel's performance, a court must avoid second-guessing with the benefit of hindsight

and must presume that counsel's performance was reasonable and adequate.  *Strickland*, 466 U.S. at 689; *see also Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient where it fails to meet "an objective standard of reasonableness," judged according to "prevailing professional norms."  *Strickland,* 466 U.S. at 687-88.  Indeed, the Eleventh Circuit has adopted a "strong" presumption that counsel's performance was reasonable, and has noted that "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken *might* be considered sound trial strategy."  *Putnam v. Head*, 286 F.3d 1223, 1243 (11th Cir. 2001) (emphasis added) (citations and quotations omitted).  Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers,* 13 F.3d at 386.

The second prong of the *Strickland* test requires a petitioner to show that the lawyer's deficient performance resulted in actual prejudice.  *Strickland,* 466 U.S. at 687, 693.  Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Lastly, because "the standards created by *Strickland* and § 2254 are both highly deferential . . . when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (citations omitted).

A court, however, is not required to "address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one."  *Strickland,* 466 U.S. at 697.  As the Supreme Court has stated, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed."  *Id.*

Significantly, the task of this Court in considering a § 2254 petition is not to repeat the inquiry of the state habeas court and assess whether counsel's performance met the *Strickland* standard for effective assistance; rather, the task of this Court is only "to determine whether the state habeas court was objectively reasonable in its *Strickland* inquiry." *Putnam*, 268 F.3d at 1244 n.17.

## V.   DISCUSSION

### A. Petitioner Has Not Met the *Strickland* Standard for Ineffective Assistance of Counsel as to Claim IV

In Claim IV, Petitioner asserts that trial counsel was ineffective for failing to call an expert on ballistics and/or metallurgical analysis "since an expert witness on ballistics and metallurgy *could have confirmed* . . . that Deputy Hernandez accidentally shot himself in the back of the head with his own gun, and that it was theoretically impossible for the Petitioner to have shot Deputy Hernandez in the back of the head[] when Petitioner was over a hundred feet in front of Deputy Hernandez." (ECF No. 3 at 35-36) (emphasis added). Petitioner also questions the State's decision not to call its own expert on ballistics, arguing that "[i]t *is possible* that such tests were not conducted [by the State] in an effort to *conceal the possibility* that Deputy Hernandez had shot himself accidentally with his own gun." *Id.* at 36 (emphasis added).

Based on these suppositions, Petitioner concludes that "[h]ad counsel called the ballistics and metallurgical experts . . . then the results *could have* corroborated Deputy Hernandez's own testimony that he was shot by a hollow point round, further proving the defense theory that Deputy Hernandez was the only one with a weapon loaded with hollow point rounds and that he accidentally shot himself." *Id.* (emphasis added). According to Petitioner, counsel's failure to call a ballistic expert "so upset the adversarial balance between the defense and the prosecution that the trial was rendered unfair and the verdict rendered suspect because the State's case was not put

to a meaningful adversarial test." *Id.* (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986), and *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

Petitioner's arguments fail for several reasons.  First, Petitioner has not shown that any expert, including those listed on the defense witness list, would have *actually* testified to the theories espoused by Petitioner.[11]  Mere speculation that missing witnesses might have provided helpful testimony is insufficient to establish that counsel's decision not to call these witnesses was deficient.  *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)) (mere speculation that missing witness would have helped the defense is insufficient to meet petitioner's burden of proof).  Rather, evidence about the missing witness' purported testimony "must generally be presented either in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *Boykin,* 2018 WL 9439838, at *4 (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also Streeter,* 335 F. App'x at 864 (petitioner's subjective belief about the substance of potential testimony, without supporting facts or affidavit, was insufficient to support claim of ineffective assistance of counsel).

Second, Petitioner mischaracterizes Deputy Hernandez's testimony regarding the type of bullet that struck him.  According to Petitioner, Deputy Hernandez "admitted being shot in the back of the head by a hollow point round." (ECF No. 3 at 35).  But that was not the Deputy's testimony.  Rather, at least three times on direct examination, Deputy Hernandez testified that one of the doctors who operated on him *had told him* that he had been shot with a hollow point bullet.

---

[11] Before the commencement of trial, defense counsel had filed a witness list containing the names of three ballistics and/or metallurgical analysis experts.  Ultimately, however, trial counsel did not call any of them to testify during trial.  (ECF No. 3 at 35).

*See, e.g.*, Tr. 812:5-9; 812:17-813:1; 823:3-10.  That is not the same as the Deputy "admitting" that he was shot in the head with a hollow point bullet.  Moreover, on redirect examination, the Deputy explained that he did not know what kind of bullet had struck him.  Tr. 828:5-8.

Third, a "decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed."  *Long v. McNeil*, No. 09-60250-CIV, 2010 WL 1138913, at *4 (S.D. Fla. Feb. 10, 2010) (citing *Conklin v. Schofield*, 366 F.3d 1193, 1204 (11th Cir. 2004), *cert. denied*, 544 U.S. 952 (2005)); *see also Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001) (petitioner did not establish ineffective assistance based on counsel's failure to call expert witness because counsel's strategic decision was not so patently unreasonable that no competent attorney would have chosen the strategy).  Indeed, the determination of which witnesses to call "is the epitome of a strategic decision, and it is one that [the Court] will seldom, if ever, second guess."  *Stepp v. Jones*, No. 16-25170-CIV, 2018 WL 9439863, at *9 (S.D. Fla. Aug. 29, 2018) (citing *Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2019)).

Ultimately, trial counsel's decision not to call these experts was a strategic decision that enabled him to argue to the jury that the State had not proven that it was a bullet from Petitioner's gun that struck Deputy Hernandez in the head.  *See Stepp*, 2018 WL 9439863, at *9 (counsel's decision not to call a witness advanced defense theory of the State's lack of evidence and was not deficient).  During cross examination of the State's witnesses, trial counsel repeatedly emphasized the State's failure to perform ballistics and metallurgical testing, and later used this gap in evidence to argue to the jury at closing that the State failed to prove beyond a reasonable doubt that it was a bullet from Petitioner's firearm that struck Deputy Hernandez.  *See, e.g.*, Tr. 1017:6-9; 1191:6-1192:4; 1193:2-1194:3; 1198:1-10; 1355:3-10; 1480:3-25.  Where, as here, counsel's reference to the missing evidence furthered Petitioner's defense of reasonable doubt, "counsel cannot be

adjudged incompetent . . . as long as the approach taken might be considered sound trial strategy." *Putnam,* 286 F.3d at 1243 (citations and quotations omitted); *see Long*, 2010 WL 1138913, at *5 (counsel's failure to call certain witnesses was not unreasonable when counsel elected to challenge the State's evidence through cross-examination and forceful argument to the jury). Accordingly, the undersigned finds that trial counsel's performance was not deficient and did not fall below "an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687.

Moreover, not only has Petitioner failed to establish that trial counsel's strategic choice not to call expert witnesses was deficient under *Strickland*, but he has also failed to show any actual prejudice resulting from this decision. *Strickland,* 466 U.S. at 687, 693. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Here, Petitioner cannot surmount the overwhelming and uncontroverted evidence that Petitioner fired the bullet that struck Deputy Hernandez in the head. For example, one witness (Nelson) testified that he saw a man in a red shirt running away from someone, saw the man in the red shirt turn around and fire two or three shots at the man behind him, who then fell to the ground. Tr. 1257:1-12. Two other witnesses (Wam and Mills) testified they saw a man in a red shirt running, carrying a black gun. Tr. 779:12-18; 841:2-16.

Forensic evidence also established that it was Petitioner who fired the bullet that struck the Deputy. First, Deputy Hernandez's gun was found by his side at the scene, fully loaded. Tr. 831:17-21; 974:18-20; 976:18-977:4; 988:5-9. Second, there were no ricochet marks, bullets or shell casings found near Deputy Hernandez's body to suggest he fired his gun accidentally. Tr. 974:10-15. The only two spent shell casings recovered at the scene were found more than 100

feet away from Deputy Hernandez, and a ballistics analysis confirmed that these bullets came from Petitioner's firearm. Tr. 974:12-15; 977:17-18; 1181:16-23.  Furthermore, Petitioner's firearm could hold 10 bullets, but had only eight bullets (seven in the magazine and one loaded in the chamber) when recovered. Tr. 1004:24-1005:5.  Accounting for the two spent casings recovered, that makes 10 bullets attributable to Petitioner's gun.  Tr. 974:12-15; 1004:24-1005:3; 1181:16-23.  Against this overwhelming evidence of guilt, Petitioner cannot meet his burden of showing that the result of the trial would have been different had the experts been called to testify.  *See* (ECF No. 6 at 8-17, 32-34) (State's summary of evidence).

**B. Petitioner Has Not Met the *Strickland* Standard for Ineffective Assistance of Counsel as to Claim V**

In Claim V, Petitioner argues that trial counsel was ineffective for failing to impeach Deputy Hernandez by showing that he either did not follow or was misinformed regarding BSO procedures on whether: (i) BSO required plainclothes officers to take action if they observed a crime or illegal act being committed; and (ii) BSO issued hollow point bullets for use by its deputies.  (ECF No. 3 at 37-38).

On the first point, trial counsel asked Deputy Hernandez whether BSO "discourages anybody being pulled over while you are in plain clothes or [driving an unmarked] vehicle." Tr. 826:25-827:2.  In response, Deputy Hernandez said, "Well, my department has strict guidance with their deputies following the policies and the rules of the Florida Department of Law Enforcement, and if a crime or an illegal act is being committed, you have to act, and that's what I was trying to do." Tr. 827:3-7.  Petitioner asserts that this "self-serving" statement is contrary to BSO procedures, which purportedly require that an "off-duty, unmarked police car or personal vehicle will not pursue a vehicle unless an occupant of the vehicle has caused serious bodily injury

20

or death." (ECF No. 3 at 37). Petitioner claims that if trial counsel had "familiarized himself with the [relevant BSO procedures], he could have impeached" Deputy Hernandez's credibility. *Id.*

Petitioner's argument, however, is without merit. As the State correctly points out, there was no pursuit involved in this case. Instead, the evidence at trial, including Petitioner's own statement, was that after Petitioner ran a red light on his motorcycle, Deputy Hernandez merely followed Petitioner into a motorcycle repair shop that Petitioner had planned to go into, to warn Petitioner about safe motorcycle driving. Tr. 773:18-774:16; 804:19-805:19; 1042:4-25. Moreover, trial counsel's question to the Deputy was not about "pursuit in unmarked cars," but about whether BSO "discouraged anybody being pulled over while [the officer] is in plain clothes or [driving an unmarked vehicle]." Accordingly, there is no basis for impeachment on this point and counsel's performance was not deficient.

As to the second point, Petitioner argues that trial counsel should have impeached Deputy Hernandez's testimony that: (i) he never used hollow point bullets in his department-issued firearm; and (ii) BSO did not permit the official use of hollow points, with evidence that Deputy Hernandez in fact had hollow point bullets in his service firearm and that hollow points were standard issue for BSO. (ECF No. 3 at 37-38). Petitioner claims that this line of questioning would have undermined the Deputy's credibility, and thus weakened the State's case. (ECF No. 3 at 38). Except for this cursory argument, Petitioner has failed to show how his trial counsel's decision not to pursue this tangential line of questioning met the *Strickland* test for ineffective assistance of counsel. "The decision to cross-examine a witness and the manner in which it is conducted are tactical decisions 'well within the discretion of a defense attorney.'" *Allen v. McNeil*, No. 03-10077-CIV, 2009 WL 856017, at *17 (S.D. Fla. Mar. 31, 2009), *aff'd sub nom. Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740 (11th Cir. 2010) (citing *Fugate v. Head,* 261

F.3d 1206, 1219 (11th Cir. 2001)). Here, trial counsel's decision not to further impeach Deputy Hernandez regarding whether he followed or knew BSO procedures regarding the use of hollow point bullets was a tactical decision and not objectively unreasonable.

In any event, Petitioner has failed to establish that he suffered actual prejudice under *Strickland* from the purported deficient cross-examination on either of these points (BSO policies regarding pursuit/hollow point bullets). To establish prejudice, Petitioner must show at least one "specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial." *Fugate*, 261 F.3d at 1219; *see also Meders v. Warden, Georgia Diagnostic Prison,* 911 F.3d 1335, 1352 (11th Cir.), *cert. denied sub nom. Meders v. Ford*, 140 S. Ct. 394 (2019*)* (finding that counsel was not deficient in failing to impeach witness on topic that did not undermine evidence of guilt). Petitioner, however, has not done so. Simply put, "the fact that trial counsel may not have highlighted every inconsistent minor detail in the victim's testimony did not have a reasonable probability of changing the outcome of the trial." *Bradley v. Sec'y, Fla. Dep't of Corr.*, No. 17-12926-K, 2018 WL 3238836, at *9 (11th Cir. Apr. 2, 2018); *see also Strickland*, 466 U.S. at 694. Moreover, Deputy Hernandez's mistaken testimony that his gun was not loaded with hollow point bullets and that BSO disapproved of the use of hollow points remained a central theme of counsel's examination of the Deputy and other witnesses.[12] *See, e.g.*, Tr. 813:12-19 (Deputy's testimony that BSO policy does not allow use of hollow point bullets); Tr. 1012:19-21 (Deputy's testimony that his gun was not loaded with hollow

---

[12] Furthermore, trial counsel cross-examined witnesses in an attempt to impeach Deputy Hernandez's credibility regarding other subjects, including: (i) whether his car lights were on, Tr. 787:21-24; (ii) whether Petitioner pushed him down before fleeing, Tr. 792:1-11; and (iii) whether Deputy Hernandez took his gun out of his holster while chasing Petitioner, Tr. 1262:11-15 974:12-15. In addition, Deputy Hernandez admitted that he suffered from cognitive problems as a result of his head injury. Tr. 810:20-23.

point bullets); Tr. 925:20-926:6 (officer's testimony that BSO issued hollow point bullets); Tr. 956:9-14 (officer's testimony that hollow point bullets are standard issue for BSO deputies). In summation, counsel highlighted these purported inconsistencies and argued to the jury that Deputy Hernandez was hit by a hollow point bullet, and that Petitioner did not have hollow point bullets in his gun.  Tr. 1476:1-1478:5 (arguing that Petitioner did not have hollow point bullets in is gun); Tr. 1476:25-1477:13 (highlighting Deputy's testimony that he was shot by a hollow point bullet); Tr. 1479:20-1480:2 (arguing that bullet fragments in Deputy's head were consistent with being shot with hollow point bullet). Thus, counsel effectively challenged Deputy Hernandez's credibility during cross-examination and highlighted perceived inconsistencies during closing to argue that the State did not prove its case beyond a reasonable doubt.  Tr. 1478:1-10 (argument that State failed to prove that the bullet that struck the Deputy came from Petitioner's gun); Tr. 1481:1-12 (argument that Deputy's testimony differed from that of other witnesses); Tr. 1482:2-12 (argument that that the State failed to explain the location of the gunshot wound, leading to reasonable doubt).

Accordingly, the undersigned finds that Petitioner has failed to show that counsel's cross-examination of Deputy Hernandez was deficient or that he suffered any prejudice under *Strickland*. Thus, Claim V should be denied.

### C.    Claim VI Should be Denied on Procedural and/or Substantive Grounds

#### 1.  *Petitioner Did Not "Fairly Present" Claim VI on Direct Appeal*

In Claim VI, Petitioner argues that the trial court erred in admitting (over counsel's objections) "multiple pieces of irrelevant and highly prejudicial evidence," which denied him constitutional due process and a fair trial.  (ECF No. 3 at 10-11).  More specifically, Petitioner challenges the trial court's admission of the following evidence: (i) ammunition, gun magazines,

gun cases, and other gun-related evidence seized from Petitioner's residence (related to the .45 caliber Glock recovered at the crime scene and a .40 caliber Smith and Wesson firearm); (ii) two target practice silhouettes seized from Petitioner's garage; (iii) Petitioner's post-arrest statement and evidence that contradicted parts of his post-arrest statement, specifically: (a) testimony from a Marine Corp representative that contradicted Petitioner's statement that he was a former Marine, *see* Tr. 1035:21-23; and (b) testimony from witness Polanco that Polanco bought two guns for Petitioner: the recovered .45 caliber Glock and a .40 caliber Smith and Wesson firearm, to contradict Defendant's statement that he did not own any firearms, *see, e.g.*, Tr. 1049:1-22; 1052:19-25; 1055:4-1056:2. Petitioner argues that admission of this evidence was "not harmless error and required a new trial." (ECF No. 3 at 48-49). Before addressing the merits of Claim VI, however, the undersigned must address whether Petitioner exhausted available state court remedies on this claim.

Petitioner did not raise Claim VI in either his initial 3.850 motion or the amended 3.850 motion for post-conviction relief before the trial court. *See* (ECF No. 7-1, Exs. 25 and 26). Nor did Petitioner raise Claim VI before the Fourth DCA on appeal following the trial court's denial of his amended 3.850 motion. *See* (ECF No. 7-1, Ex. 30). That said, Petitioner did raise a similar evidentiary argument on the direct appeal of his conviction to the Fourth DCA. *See* (ECF No. 7-1, Ex. 12). On direct appeal of his conviction, Petitioner argued that the trial court erred in admitting "into evidence . . . multiple pieces of irrelevant and highly prejudicial evidence," which required reversal and a new trial. *Id.* Specifically, Petitioner challenged the admission of: (i) his post-arrest statement; (ii) testimony from a Marine Corp representative that contradicted Petitioner's post-arrest statement that he was a former Marine; (iii) testimony from Polanco regarding the .40 caliber Smith and Wesson gun; and (iv) assorted ammunition and gun-related

24

items, including two target practice silhouettes, seized during the search of Petitioner's residence. *See* (ECF No. 7-1, Ex. 12 at 104-05).

According to Petitioner, the trial court's admission of the "irrelevant and overly prejudicial evidence" was reversible error, because "it cannot be said beyond a reasonable doubt that there is no reasonable possibility that the inadmissible evidence affected the verdict." (ECF No. 7-1, Ex. 12 at 110). Notably, Petitioner's argument on direct appeal (both in his initial and reply brief) was based exclusively on state evidentiary rules, without discussion or even a passing reference to any potential federal constitutional violation. *See* (ECF No. 7-1, Exs. 12 and 14). The Fourth DCA affirmed Petitioner's conviction, finding "no error in the trial court's admission of the [challenged] evidence." *Maldonado*, 64 So. 3d at 168; *see also* (ECF No. 7-1, Ex. 15).

Against this background, the State argues that although Petitioner raised an argument "similar" to Claim VI on direct appeal from his conviction, Petitioner nonetheless failed to "fairly present" a cognizable federal constitutional claim in the state proceedings. (ECF No. 6 at 37); *see generally* (ECF No. 7-1, Exs. 12, 14) (Petitioner's brief and reply brief on direct appeal). Thus, the State asserts that "Petitioner is procedurally barred from proceeding with this argument in federal court." (ECF No. 6 at 37). For the reasons discussed below, the undersigned agrees.

 Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b), (c). To satisfy the exhaustion requirement, a petitioner must "fairly present" federal claims to the state courts to give those courts an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quotation marks omitted). Specifically, a habeas petitioner must have "presented his claims to the state court such that a reasonable reader would understand each claim's particular

legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). The state court must have had a "meaningful opportunity to consider any federal bases for relief." *Keys v. Sec'y, Fla. Dep't of Corr.*, 773 F. App'x 556, 559 (11th Cir. 2019); *see also Picard v. Connor*, 404 U.S. 270, 278 (1971) (although petitioner need not recite "book and verse" of the federal constitution, he must present the substance of his federal claim to the state court below). Thus, a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair,* 416 F.3d at 1303.

Here, Petitioner never argued on direct appeal to the Fourth DCA that the trial court's admission of the challenged evidence violated his rights under the U.S. Constitution, nor did he cite to any clearly established federal law that the trial court unreasonably applied or failed to follow in admitting the challenged evidence. Rather, Petitioner's appeal was premised solely on the trial court's erroneous application of state evidentiary rules, including Fla. Stat. § 90.401 and § 90.403 (regarding relevance and unfair prejudice, respectively), and state law. *See, e.g.*, (ECF No. 7-1, Ex. 12 at 106). At no point on direct appeal did Petitioner claim to have been denied due process of law as guaranteed by the Fourteenth Amendment. This is fatal to Claim VI. Petitioner "did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but [also] denied him the due process of law guaranteed by the Fourteenth Amendment." *Duncan,* 513 U.S. at 366; *see Gacita*, 2015 WL 5730005, at *4 (habeas petitioner's claims were not exhausted where petitioner never argued in state court that the admission of evidence "violated any federal constitutional right or cited to any federal law."). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 366.

26

Not having been apprised of any potential federal constitutional claim or applicable federal law, the Fourth DCA denied Petitioner's direct appeal exclusively on state law grounds. *See* (ECF No. 7-1, Ex. 15). Thus, Petitioner did not "fairly present" Claim VI on direct appeal for purposes of habeas review. Claim VI is therefore unexhausted.[13]

### 2. Alternatively, Claim VI Should be Denied on the Merits

Alternatively, even if Petitioner "fairly presented" Claim VI on direct appeal in state court, Claim VI nonetheless fails on the merits. Under § 2254(d), a petitioner must demonstrate that the State court's application of Supreme Court precedent was "objectively unreasonable." *Wiggins,* 539 U.S. at 520-21(citation omitted). An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington,* 562 U.S. at 101(citation omitted). Because "the state court's decision must have been more than incorrect or erroneous," *Wiggins*, 539 U.S. at 520, the Supreme Court has repeatedly described the § 2254(d) standard as "difficult to meet." *Harrington*, 562 U.S. at 102; *Cullen*, 563 U.S. 181.

Here, Petitioner has not shown that the Fourth DCA's decision was "objectively unreasonable." Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that there is no possibility fairminded jurists could disagree." *Michel*, 2019 WL 1904110, at *5 (citing *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2298 (2017)). Having

---

[13] Moreover, for the same reasons discussed above with reference to Claims I, II, and III, *see* Section III.C, *supra*, Petitioner is now procedurally barred from bringing Claim VI in state court. Moreover, Petitioner has failed to establish the necessary "cause and prejudice" that would excuse his failure to present Claim VI in state court.

reviewed the challenged evidence and considered its potential effect on the outcome of the trial, the undersigned concludes that is not the case here.

    *a. The Post-arrest Statement*

Petitioner made a post-arrest statement in which he denied shooting Deputy Hernandez, but admitted other aspects of the event. *See generally*, Section I, *supra*; *see also* Tr. 1027:8-1094:15. The Fourth DCA summarized Petitioner's statement as follows:

> The defendant gave a recorded statement to the police in which he immediately informed them that he had been in the Marines. He admitted to running a light and pulling into the [motorcycle] repair shop. However, he indicated that he told the victim he was trying to become an officer. He was nervous when stopped because he was on probation and his license was revoked. He fled because he was nervous. He indicated that the victim pushed him and threatened to shoot him if he did not stop [running]. He started ducking because he had learned that evasion in the Marines. He heard the gun shots, but kept running. He jumped a fence, cut his hand, and hid in the meter room of a condominium. He took off his shirt because he overheard an officer describing him as wearing a red shirt. He jumped on another vehicle to get a ride because he was scared. He adamantly denied owning a gun and claimed he had been wearing the holster for a BB gun. He indicated that a friend had brought guns to his house and left them there.

*Maldonado*, 64 So. 3d at 168; (ECF No. 7-1, Ex. 15 at 174).

During trial, Petitioner moved to exclude his post-arrest statement on the basis that it was "hearsay, irrelevant, and prejudicial until . . . [Petitioner] testified and could be properly impeached." (ECF No. 3 at 39). In response, the State argued that "although Petitioner denied the shooting, he [nonetheless] made relevant admissions [that] . . . [he was] approached by the Deputy, ran from the Deputy, wore a red shirt, discarded the red shirt and holster, [described] his flight path, that he cut his hands fleeing, tried to enter a car, and tried to hide from the police." *Id*. The State also argued that the gun-related evidence seized in the search of Petitioner's residence established the falsity of Petitioner's post-arrest statements (*i.e.,* consciousness of guilt)

and established his ownership of the gun used to shoot the Deputy.  *See* (ECF No. 7-1, Ex. 15 at 175).

The trial court denied Petitioner's motion to exclude the statement, finding that it was admissible as an exception to the hearsay rule, as an admission of a party opponent, and as evidence of consciousness of guilt.  Tr. 7:16-11:7; *see also* (ECF No. 3 at 39).

### b.  *Gun Evidence and Polanco Testimony*

Petitioner also challenged the trial court's admission of gun-related evidence seized during a search of his residence.  (ECF No. 3 at 39-40).  The evidence seized during the search included: (i) ammunition, gun magazines, gun cases, and other gun-related evidence (related to the .45 caliber Glock recovered at the crime scene and a .40 caliber Smith and Wesson firearm); and (ii) two target practice silhouettes seized from Petitioner's garage.  Petitioner concedes that evidence related to the Glock .45 firearm recovered at the scene of the shooting is relevant and admissible.  *See* (ECF No. 3 at 45) (noting that Petitioner did not contest on appeal that "the evidence of the gun alleged to have been used in the offense was relevant"); *see also* (ECF No. 7-1, Ex. 12 at 105 n.3) (same).  Thus, Petitioner's challenge is limited to evidence regarding the .40 caliber Smith and Wesson firearm, which was not connected to the crime.  This evidence includes: (i) fourteen .40 caliber bullets loaded in a magazine; (ii) a black plastic tray with .40 caliber ammunition; (iii) a blue gun box manufactured by Smith and Wesson; and (iv) two target practice silhouettes found in the garage.  Relatedly, Petitioner also challenges the testimony of Polanco that Polanco purchased both firearms, the .45 Glock and the .40 Smith and Wesson, for Petitioner.

At trial, Petitioner moved to exclude the physical evidence and Polanco's testimony on the grounds that it was irrelevant to the charged offense and cumulatively prejudicial.  (ECF No. 3 at 40).  The State argued that the evidence and testimony were relevant to show that Petitioner's

statement that he did not own a gun was false, to show consciousness of guilt, and general familiarity with guns. (ECF No. 6 at 37-44). The trial court denied Petitioner's motion, and admitted the evidence and testimony, stating:

> I find that all of these items here have probative value, in light of the issues in the case, and the statements that the defendant allegedly made to the police. The evidence that is on this list that was recovered from the home is clearly probative of whether the defendant shot the alleged victim in the case. I say that in light of all the facts including the fact that there were casings found 120 feet, allegedly, from where Deputy Hernandez was found. Additionally, in light of the defendant's post-arrest statement, the evidence that is proffered by the State is probative to show its alleged falsity and therefore probative of consciousness of guilt.

Tr. 7:18-8:6; (ECF No. 3 at 40).

As to Polanco's testimony that he had purchased the .40 caliber Smith and Wesson firearm for Petitioner, the trial court stated:

> The existence of many facts at issue in this case are more likely true if we know that Mr. Polanco sold the defendant not one but more than one firearm, including the credibility of Mr. Polanco, whether the defendant was the one who shot the officer, as well as the truth or untruth of the defendant's post-arrest statements to the police.

Tr. 5:6-12.

c. *Marine Corp Witness Testimony*

Lastly, Petitioner challenges the trial court's admission of testimony from a Marine Corp representative who testified that there was no record of Petitioner having served as a Marine. Petitioner objected to this testimony as irrelevant, claiming that its only purpose was to impeach Petitioner's post-arrest statement on a collateral matter. (ECF No. 3 at 41-42). The trial court nonetheless allowed the testimony on the grounds that the falsity of Petitioner's post-arrest statement could establish consciousness of guilt. *See* Tr. 1130:18-1131:16.

### d. *Direct Appeal of the Admission of Challenged Evidence*

On direct appeal, the Fourth DCA found no error in the trial court's admission of the above-challenged evidence.  (ECF No. 7-1, Ex. 15 at 176); *Maldonado*, 64 So. 3d at 169.  Furthermore, the Fourth DCA stated that "[e]ven if the admission of [Petitioner's statement and other evidence] constituted error, we would find the error harmless [because] the record demonstrates beyond a reasonable doubt that the error did not contribute to the verdict."  *Id.*

The Fourth DCA explained:

[At the trial level,] defendant moved to suppress the items seized and his [post-arrest] statement.  He claimed the items seized [from his residence] were irrelevant and his statement did not amount to a confession and were therefore more prejudicial than probative.  The State responded that the defendant made relevant admissions in his statement and confirmed that the gun used to shoot the deputy belonged to the defendant.

The [trial] court denied both motions and admitted the statement and the items into evidence over defense objections.  The [trial] court found the seized items were probative of whether the defendant shot the victim and to show the falsity of his post-arrest statement to the police [that he did not own a gun].  The statement was relevant to infer consciousness of guilt.  The [trial] court also permitted a witness to testify that that the defendant had not been in the Marines, again to show consciousness of guilt.

\* \* \*

The sole issue on appeal is whether the court erred in admitting the [defendant's post-arrest] statement, the seized items, and the witness' testimony that the defendant was not in the Marines.  He claims the evidence was irrelevant and overly prejudicial. . . .  Nevertheless, we find no error in the trial court's admission of the evidence.

"Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat.  "The trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion."  *Jones v. State*, 32 So. 3d 706, 712 (Fla. 4th DCA 2010) (quoting *Heath v. State*, 648 So. 2d 660, 664 (Fla. 1994).  "It is well-settled that weapons uncovered in a search of premises controlled by a defendant can be admissible in evidence."  *O'Connor v. State*, 835 So. 2d 1226, 1230 (Fla. 4th DCA 2003).

*Maldonado*, 64 So. 3d at 168-69.

After distinguishing the state-law cases cited by defendant,[14] the court concluded:

Here . . . the cartridges found at the defendant's house matched those found at the scene, the gun-box matched the gun used in the shooting, and the other items rebutted the defendant's statement that he did not own guns. We also find *Stoll v. State*, 762 So. 2d 870 (Fla. 2000), distinguishable. There, the admission of testimony from a rebuttal witness about what the victim had said was found to be inadmissible hearsay. While the [*Stoll*] court commented that the State cannot use a witness to rebut statements made by a defendant when the State introduced the defendant's testimony, the ruling actually rested on hearsay objections.

Even if the admission of these items constituted error, we would find the error harmless. *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). The record demonstrates beyond a reasonable doubt that the error did not contribute to the verdict.

In reviewing a state court's evidentiary rulings, federal courts do not sit as a "'super' state supreme court." *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) (quoting *Meyer v. Estelle*, 621 F.2d 769, 771 (5th Cir. 1980)). "Unlike a state appellate court, [federal courts] are not free to grant the petitioner relief simply because we believe the trial judge has erred. The scope of [federal] review is extremely restricted." *Shaw*, 695 F.2d at 530; *see also Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014) (noting that a federal court's authority to review state evidentiary rulings is "severely restricted" in a habeas action). Indeed, relief from state court evidentiary rulings may be granted only when the alleged error results in a denial of "fundamental fairness," which means that a state trial error must be "material in the sense of a crucial, critical, highly significant factor." *Shaw,* 695 F.2d at 530 (citing *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976), *cert. denied*, 429 U.S. 850 (1976)); *Taylor*, 760 F.3d at 1296; *Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir. 1984). Thus, habeas review is limited to

---

[14] The court found *Jones v. State*, 32 So. 3d 706 (Fla. 4th DCA 2010) and *Huhn v. State*, 511 So. 2d 583 (Fla. 4th DCA 1987) to be factually distinguishable.

situations where the alleged evidentiary error "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941).

Here, in light of the overwhelming and uncontroverted evidence that Petitioner shot Deputy Hernandez, *see* Section I, *supra*, Petitioner has not met this high bar.  To briefly summarize the evidence:  four eye-witnesses (Wam, Mills, Nelson and Deputy Hernandez) testified that Petitioner had a gun; two eye-witnesses saw Petitioner shoot Deputy Hernandez (Nelson and Deputy Hernandez); Deputy Hernandez's gun was recovered, fully loaded; Petitioner's DNA was on the gun recovered at the scene, a .45 caliber Glock (the "Glock"); although the Glock cartridge could hold 10 rounds, there were only 8 rounds in the cartridge when the Glock was recovered; a forensic analysis of two spent casings (found approximately 120 feet from Deputy Hernandez's body) confirmed that the two spent bullets were fired from the Glock; the Glock's serial number (KTB400) matched the serial number on a gun receipt found in a gun box in Petitioner's garage; the gun receipt for the Glock was in the name of Polanco; Polanco testified that he purchased the Glock for Petitioner.  Against this mountain of inculpatory evidence, it cannot be said that the admission of evidence contradicting Petitioner's statement about being a former Marine or owning a second gun or owning target practice silhouettes "so infused the trial with unfairness as to deny due process of law." *Lisenba,* 314 U.S. at 228.  Indeed, even if the court erred in admitting this evidence, the error any error was not "material in the sense of a crucial, critical, highly significant factor." *Shaw,* 695 F.2d at 530.  Accordingly, Claim VI fails on the merits.

## VI.   CERTIFICATE OF APPEALABILITY

A Petitioner seeking to appeal a district court's final order denying his Petition for a writ of habeas corpus has no absolute entitlement to appeal.  Rather, Petitioner must obtain a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009).  A

COA should be issued only when the Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a Petitioner's constitutional claims on the merits, Petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Michel*, 2019 WL 1904110, at *10 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). However, when the district court rejects the claim on procedural grounds, the Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.; Slack,* 529 U.S. at 484.

The undersigned recommends that the District Court deny a COA.

## VII.  RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that: (i) the Petition (ECF No. 1) be **DENIED**; and (ii) a Certificate of Appealability be **DENIED**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. Failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R.  3-1 (2019); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, on May 1, 2020.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Beth Bloom
         All Counsel of Record